Michael B. Schaedle
Evan J. Zucker
Jennifer K. Malow
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000

*Counsel to the Foreign Representative*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| Lauren Spencer-Smith, | Chapter 15<br>Case No. 26-11734 (pb) |
| Debtor in a Foreign Proceeding. | |

**VERIFIED PETITION UNDER CHAPTER 15 FOR
RECOGNITION OF FOREIGN MAIN PROCEEDING**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii
PRELIMINARY STATEMENT ......................................................................................... 1
I.  JURISDICTION AND VENUE .................................................................................... 3
II.  BACKGROUND ............................................................................................................ 3
    A.    Commencement of Canadian Proceeding ............................................................ 3
    B.    General Background .............................................................................................. 4
    C.    Events Leading Up to the Canadian Insolvency Proceeding ................................ 6
    D.    The Status of the Canadian Proceeding ................................................................ 9
III.  RELIEF REQUESTED .............................................................................................. 10
IV.  BASIS FOR RECOGNITION AND RELIEF REQUESTED .................................... 10
    A.    The Petition Satisfies the Requirements of Chapter 15 and the
        Canadian Proceeding is Entitled to Recognition as a Foreign Main
        Proceeding ........................................................................................................... 10
        i.    The Canadian Insolvency Proceeding is a "Foreign
                Proceeding" .............................................................................................. 11
        ii.    Ms. Lauren Spencer-Smith is an Appropriate "Foreign
                Representative" ........................................................................................ 13
        iii.    The Petition Meets the Requirements of 11 U.S.C. § 1515 ...................... 14
    B.    Alternatively, the Canadian Proceeding Should be Recognized as a
        Foreign Nonmain Proceeding .............................................................................. 15
    C.    Upon Recognition Foreign Representative is Entitled to Relief
        Under 11 U.S.C. §§ 1520 and 1521 .................................................................... 16
        i.    Section 1520 Provides Automatic Relief to the Foreign
                Representative Upon Recognition ............................................................ 16
        ii.    Granting the Foreign Representative Relief under 11 U.S.C.
                § 1521 is Necessary and Appropriate ...................................................... 17
    D.    Granting Recognition Would be Consistent With, and Not
        Manifestly Contrary to, United States Public Policy .......................................... 20
V. RESERVATION OF RIGHTS ....................................................................................... 21
VI. SATISFACTION OF LOCAL BANKRUPTCY RULE 9013-1(A) .................................... 22
VII. HEARING DATE AND NOTICE ................................................................................ 22
VIII. CONCLUSION .............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Atlas Shipping A/S,*
  404 B.R. 726 (Bankr. S.D.N.Y. 2009) ...................................................................21

*In re Ionosphere Clubs, Inc.,*
  922 F.2d 984 (2d Cir. 1990) .................................................................................20

*In re Iovate Health Sciences International Inc.,*
  Case No. 25-11958 (MG) (Bankr. S.D.N.Y. Oct. 28, 2025) ....................................10

*In re Kemsley,*
  489 B.R. 346 (Bankr. S.D.N.Y. 2013) ..............................................................12, 13

*In re Loy,*
  380 B.R. 154 (Bankr. E.D. Va. 2007) ....................................................................13

*In re OAS S.A.,*
  533 B.R. 83 (Bankr. S.D.N.Y. 2015) ......................................................................20

*In re Oversight & Control Comm'n of Avánzit, S.A.,*
  385 B.R. 525 (Bankr. S.D.N.Y. 2008) ....................................................................10

*In re Ran,*
  607 F.3d 1017 (5th Cir. 2010) ..........................................................................13, 16

*In re SPhinX, Ltd.,*
  351 B.R. 103 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) ...........13

*JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.,*
  412 F.3d 418 (2d Cir. 2005).................................................................................21

*Lavie v. Ran,*
  406 B.R. 277 (S.D. Tex. 2009), *aff'd sub nom. In re Ran*, 607 F.3d 1017 (5th
  Cir. 2010) .............................................................................................................13

*Ostano Commerzanstalt v. Telewide Sys., Inc.,*
  790 F.2d 206 (2d Cir. 1986)..................................................................................17

**Statutes**

11 U.S.C. § 101(23) ...............................................................................................11, 12

11 U.S.C. § 101(24) .........................................................................................10, 13, 14

11 U.S.C. § 105 ....................................................................................................................................19

11 U.S.C. § 105(a) ..........................................................................................................................10, 18

11 U.S.C. § 361 .............................................................................................................................18, 19

11 U.S.C. § 362 ......................................................................................................................1, 2, 18, 19

11 U.S.C. § 362(a) ...............................................................................................................................17

11 U.S.C. § 365(e) .........................................................................................................................18, 19

11 U.S.C. § 1501 .................................................................................................................................20

11 U.S.C. § 1501(a) ............................................................................................................................19

11 U.S.C. § 1502(2) ............................................................................................................................15

11 U.S.C. § 1502(4) ............................................................................................................................12

11 U.S.C. § 1502(5) ............................................................................................................................15

11 U.S.C. § 1506 .................................................................................................................................20

11 U.S.C. § 1507 ..........................................................................................................................18, 19

11 U.S.C. § 1507(a) ............................................................................................................................10

11 U.S.C. § 1509(b) ............................................................................................................................10

11 U.S.C. § 1515 .....................................................................................................................10, 14, 15

11 U.S.C. § 1515(b)(1) ........................................................................................................................15

11 U.S.C. § 1515(b)(2) ........................................................................................................................15

11 U.S.C. § 1515(c) .............................................................................................................................15

11 U.S.C. § 1515(d) ............................................................................................................................15

11 U.S.C. § 1516(c) .............................................................................................................................12

11 U.S.C. § 1517 ..........................................................................................................................10, 15

11 U.S.C. § 1517(a) ......................................................................................................................10, 14

11 U.S.C. § 1517(a)(3) ........................................................................................................................14

11 U.S.C. § 1517(b)(1) ........................................................................................................................12

11 U.S.C. § 1517(c) ........................................................................................................................22

11 U.S.C. § 1518 ............................................................................................................................21

11 U.S.C. § 1519(a) ........................................................................................................................21

11 U.S.C. § 1520 ................................................................................................................10, 16, 17

11 U.S.C. § 1520(a) ........................................................................................................................18

11 U.S.C. § 1521 ..................................................................................................................... *passim*

11 U.S.C. § 1521(a) ..................................................................................................................18, 21

28 U.S.C. § 157(b)(2)(P) ..................................................................................................................3

28 U.S.C. § 1410 ..............................................................................................................................3

## Other Authorities

Fed. R. Bankr. P. 1007(a)(4) ..........................................................................................................15

Fed. R. Bankr. P. 2002(q) ..............................................................................................................22

S.D.N.Y. LBR 2002-2......................................................................................................................22

S.D.N.Y. LBR 2002-4......................................................................................................................22

S.D.N.Y. LBR 9013-1(a) ................................................................................................................22

Lauren Spencer-Smith (the "Debtor"), in her capacity as the authorized foreign representative (the "Foreign Representative") in her pending insolvency proceeding (the "Canadian Proceeding") under Canada's Bankruptcy and Insolvency Act (R.S.C. 1985, c. B-3 as amended) (the "BIA") pending before the Supreme Court of British Columbia in Bankruptcy (the "Canadian Court"),[1] respectfully files this *Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding* (the "Verified Petition").[2] The Verified Petition, along with all certified documents, statements, lists and other documents required under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), filed contemporaneously herewith, is filed in furtherance of: (i) the Official Form Petition (collectively, with this Verified Petition, the "Petition") filed pursuant to sections 1504 and 1515 of Title 11 of the United States Code (the "Bankruptcy Code") commencing a case under chapter 15 ancillary to the Canadian Proceeding; and (ii) seeking recognition of the Canadian Proceeding as a "foreign main proceeding."

## PRELIMINARY STATEMENT

1. The Debtor, a Canadian singer-songwriter, has commenced an insolvency proceeding under the BIA by filing a proposal. Through this Verified Petition, she seeks recognition of the Canadian Proceeding as a foreign main proceeding under chapter 15 of the Bankruptcy Code and ancillary relief, including the imposition of the automatic stay under section

---

[1]   A link to the BIA is included as footnote 1 to the Canadian Counsel Declaration (as defined in footnote 2 below).

[2]   Filed contemporaneously with this Verified Petition is the *Declaration of Peter J. Reardon in Support of (I) Verified Chapter 15 Petition, (II) Motion of Foreign Representative for Provisional Relief, and (III) Related Relief* (the "Canadian Counsel Declaration") and the *Declaration of Lauren Spencer-Smith, Pursuant to 11 U.S.C. § 1515 and in Support of Verified Petition, Recognition Hearing, and Motion for Provisional Relief Pending Recognition of a Foreign Main Proceeding* (the "Foreign Representative Declaration"). All exhibits referred to herein are attached to the Canadian Counsel Declaration or the Foreign Representative Declaration. In addition, all capitalized terms not otherwise defined herein have the meaning ascribed to them in either the Canadian Counsel Declaration or the Foreign Representative Declaration.

362 of the Bankruptcy Code. Recognition is necessary because the Debtor has assets in the United States, including ongoing income streams derived from her Recording Agreement (as herein defined) with UMG Recordings, Inc. and other executory entertainment industry agreements, and without the protections afforded by recognition, creditors could commence or continue actions against her or her U.S.-based assets, thereby undermining the orderly Canadian restructuring process and prejudicing the interests of all stakeholders.

2.      The Canadian Proceeding was precipitated by a judgment entered against the Debtor in the United States District Court for the Southern District of New York. The Debtor entered into professional management and legal services agreements with David Ehrlich and his affiliated entities at the age of sixteen. She terminated her relationship with the Ehrlich Parties on May 13, 2022, following disputes that arose during a promotional tour when she was eighteen years old. On February 5, 2026, the District Court issued an Opinion and Order granting summary judgment in favor of the Ehrlich Parties on their breach of contract claims, finding that the Debtor remained liable for certain unpaid commissions and legal fees. Following entry of the Opinion and Order, on May 26, 2026, the District Court entered a Stipulated Final Partial Judgment (the "Judgment") in the amount of $2,967,554.06 plus pre-judgment and post-judgment interest, as well as attorneys' fees in an amount to be determined, in favor of the Ehrlich Parties.

3.      Faced with the prospect of immediate enforcement of the Judgment, and limited assets, Ms. Spencer-Smith was compelled to seek relief under the BIA. The Canadian Proceeding is intended to provide the Debtor with a breathing spell so that she may have the opportunity to present the Proposal (as herein defined) to her creditors that will address her outstanding liabilities in a fair and equitable manner. Recognition of the Canadian Proceeding in this Court, together with the protections afforded upon recognition, including section 362 of the Bankruptcy Code, is

2

therefore both warranted and necessary to afford the Debtor the time and space to devise a plan to address her liabilities while preserving value for the benefit of all creditors.

## I.
## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, sections 109 and 1501 of the Bankruptcy Code, the *Standing Order of Referral of Cases to Bankruptcy Judges* of the United States District Court for the Southern District of New York (Ward, Acting CJ.), dated July 10, 1984, and the *Amended Standing Order of Reference M-431* dated January 31, 2012 (Preska, Acting CJ).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1410.

## II.
## BACKGROUND

A.      **Commencement of Canadian Proceeding**

6.      On June 24, 2026, the Debtor filed a Proposal (the "Proposal") in the Canadian Proceeding pursuant to section 50 of the BIA. MNP Ltd. ("Proposal Trustee") was appointed as the Debtor's proposal trustee. The next day, on June 25, 2026, the Office of Superintendent of Bankruptcy Canada issued a Certificate of Filing of a Notice of Intention to Make a Proposal - Section 62 (the "Certificate of Filing") that, pursuant to subsection 69.1 of the BIA, stayed all proceedings against the Debtor (the "Canadian Stay"). *See* Foreign Representative Declaration, Ex. A; Canadian Counsel Declaration, ¶¶ 5-7.

7.      On July 14, 2026, the Canadian Court granted an Order (the "Foreign Representative Order"), *inter alia*: (a) authorizing the Debtor to act as a foreign representative, and (b) authorizing the Foreign Representative to apply to the United States Bankruptcy Court for relief pursuant to chapter 15 of the Bankruptcy Code. *See* Foreign Representative Declaration, Ex.

3

C. The Debtor has now commenced this ancillary chapter 15 case (the "Chapter 15 Case") to preserve value for all stakeholders. Specifically, the Chapter 15 Case will prevent the Debtor's creditors, some of whom have contacts with the United States and are subject to personal jurisdiction of the Court, and judgment creditors from commencing or proceeding with actions in the United States that are more properly the subject of the Canadian Proceeding or that will interfere with the Debtor's restructuring process. Recognition of the Canadian Proceeding will, among other things, ensure that the Canadian Stay is respected in the United States. For the reasons set forth herein, the Foreign Representative submits that the relief requested in the Petition is necessary and appropriate for the benefit of the Debtor, her creditors, and other parties in interest.

B.     **General Background**

8.     Lauren Spencer-Smith is a notable Canadian singer-songwriter from Port Alberni, British Columbia, based in Nanaimo, British Columbia.

9.     The Debtor is a dual citizen of Canada and the United Kingdom who resides in Nanaimo, Canada.  She moved to Canada from the United Kingdom, at the age of three with her parents, and has lived in Canada for approximately 20 years. She currently lives with her partner in Nanaimo, Canada.

10.     She first gained public attention through YouTube, where she posted covers beginning in 2014, and later through an appearance on the eighteenth season of *American Idol* in 2020, where she placed in the top 20. The Debtor is best known for her 2022 single "Fingers Crossed," which went viral on TikTok and reached the top 20 in numerous countries, including the United States, and charted in the top 10 in Australia, New Zealand, and the United Kingdom. The Debtor's 2019 live album, *Unplugged, Vol. 1*, earned a *Juno Award* nomination for Adult Contemporary Album of the Year, and her debut studio album, *Mirror*, released in 2023, features both "Fingers Crossed" and her follow-up single "Flowers."

11.     After the release of "Fingers Crossed," the Debtor entered into a recording agreement, on February 4, 2022 (the "Recording Agreement"), with Island Records and Republic Records, divisions of UMG Recordings, Inc. ("UMG"). The Recording Agreement remains in effect and is governed by New York law.

12.     The Debtor's total assets are approximately $5,462,376 CAD and includes: (a) cash on hand at an RBC Royal Bank account, in Canada, (b) shares in three corporations: Three Name Productions Inc., a Canadian corporation, LSS Music Inc., a Canadian corporation, and Lauren Spencer Smith Touring Inc., a Delaware corporation (c) a 50% interest in her homestead in Nanaimo, Canada, (d) a condominium in Nanaimo, Canada, (e) two motor vehicles, and (f) various receivables from her performances.

13.     The Debtor's liabilities include: (a) the Judgment; (b) a mortgage obligation to Manulife Bank of Canada; and (c) a vehicle financing obligation with respect to her car.

14.     The Debtor has property or connections in the United States, and particularly in New York, including but not limited to:

a.      Ms. Spencer-Smith receives funds from various U.S. based entertainment companies, including TuneCore, from the sale of her music;

b.      A bank account at City National Bank in New York;

c.      Ms. Spencer-Smith's business team is based in New York;

d.      An interest in the unearned portion of a retainer with the New York office of Blank Rome LLP;

e.      The pending SDNY Action and related appeals; and

f.      The Recording Agreement is governed by New York law.

5

C.    **Events Leading Up to the Canadian Insolvency Proceeding**

15.    In March 2020, while the Debtor was performing on the television show *American Idol*, she met David Ehrlich ("Ehrlich"), an entertainment industry lawyer. On or about April 17, 2020, Ms. Spencer-Smith and Ehrlich entered into an engagement agreement (the "Engagement Agreement") pursuant to which the Debtor engaged Ehrlich and his firm, David M. Ehrlich Esq. P.C., d/b/a David M. Ehrlich & Associates, P.C. ("Ehrlich & Associates"), as her legal representative to render legal services generally in connection with her career in the entertainment industry. In exchange, the Debtor agreed to pay Ehrlich & Associates a fee equal to five percent (5%) of all gross monies and any other compensation earned or received by Ms. Spencer-Smith as a result of her entertainment services.[3]

16.    On or about January 1, 2021, the Debtor entered into a management agreement (the "Management Agreement") with Ehrlich and Song Collect, Inc. d/b/a DME Management ("DME Management," and collectively with Ehrlich and Ehrlich & Associates, the "Ehrlich Parties"), pursuant to which DME Management agreed to serve as the Debtor's exclusive personal manager for a term of five years. Under the Management Agreement, Ms. Spencer-Smith agreed to pay DME Management a commission equal to fifteen percent (15%) of her gross income from entertainment services.

17.    On May 13, 2022, following a promotional tour in Europe and Canada during which disputes arose regarding Ehrlich's conduct, the Debtor delivered a termination letter to Ehrlich, seeking to immediately terminate the relationship between herself and the Ehrlich Parties. Following the delivery of that letter, the Debtor ceased making commission and legal fee payments to the Ehrlich Parties under the Management Agreement and the Engagement Agreement.

---

[3] The Engagement Agreement also provided for "a success fee of no less than 10% (instead of 5%) of the Gross Compensation that [Spencer-Smith] receive[s] in the first year from an agreement . . . if [Ehrlich & Associates] [has] been directly responsible for [Spencer-Smith] obtaining such agreement." Judgement at p.3.

18.     On March 30, 2023, Ms. Spencer-Smith filed a complaint against the Ehrlich Parties in the United States District Court for the Southern District of New York (the "District Court"), Case No. 23-cv-2652 (LJL), asserting claims for breach of fiduciary duty, breach of the Management Agreement, breach of the Engagement Agreement, and faithless servant (the "Spencer-Smith Action"). That same day, the Ehrlich Parties filed a separate complaint against Ms. Spencer-Smith in the District Court, Case No. 23-cv-2653 (LJL), asserting claims for breach of the Management Agreement, breach of the Engagement Agreement, declaratory judgment, and defamation (the "Ehrlich Action," and together with the Spencer-Smith Action, the "SDNY Action"). The two actions were consolidated by stipulation and order on May 18, 2023.

19.     On February 5, 2026, the District Court issued an Opinion and Order on the parties' cross-motions for summary judgment (the "Summary Judgment Order"). The District Court granted the Ehrlich Parties' motion for summary judgment with respect to all of the Debtor's claims, finding that: (a) the Debtor did not give DME Management the required notice and opportunity to cure under the Management Agreement before terminating the relationship; (b) there were no genuine facts establishing that DME Management breached the "reasonable efforts" promotion clause of the Management Agreement; (c) Ehrlich & Associates did not breach the Engagement Agreement; and (d) the Ehrlich Parties did not breach their fiduciary duties to the Debtor as her attorneys or managers. The District Court denied the Ehrlich Parties' motion with respect to damages, finding that genuine issues of disputed fact remain regarding the quantum of damages, and scheduled a trial on the issue of damages.

20.     In April 2026, the Ehrlich Parties served an order of attachment on, among others, garnishees including Broadcast Music, Inc., Entertainment Partners, LLC, GEP Talent Services, LLC and LiveNation Entertainment, Inc. ("LiveNation").

21.     On May 26, 2026, the District Court entered the Judgment in the amount of $2,967,554.06 plus pre-judgment and post-judgment interest, as well as attorneys' fees in an amount to be determined,  in favor of the Ehrlich Parties.

22.     On June 21, 2026, the Debtor filed a Notice of Civil Appeal to the United States Court of Appeals for the Second Circuit appealing the District Court's February 5, 2026 Opinion and the May 26, 2026, Judgment. *See Spencer-Smith v. Ehrlich*, Case No. 26-1690 (2d. Cir) and *Ehrlich v. Spencer-Smith*, Case No. 26-1691 (2d. Cir) (collectively, the "2d Cir. Appeal"). A briefing schedule on the appeal has not yet been entered.

23.     On June 26, 2026, the Ehrlich Parties filed a motion in the District Court seeking $3,038,776.80 in attorneys' fees and $132,312.13 in costs and disbursements. Briefing on such motion is still ongoing and the Debtor's deadline to respond is August 7, 2026.

24.     On July 2, 2026, the Clerk's Office for the District Court issued an Abstract of Judgment.

25.     A Marshal's Notice of Levy and Sale, dated July 8, 2026, was served upon LiveNation with respect to the Judgment and on July 15, 2026, LiveNation turned over to the Marshal $314,186 (*i.e.*, the LiveNation receivable due to Lauren Spencer Smith Touring Inc. included in the Proposal submitted in the Canadian Proceeding for distribution to creditors).

26.     Ultimately, the entry of a judgment against the Debtor in the SDNY Action combined with the claim for attorneys' fees and costs precipitated the commencement of the Canadian Proceeding, as the Debtor requires time to devise and, if possible, reach a consensual resolution on a plan to address her outstanding liabilities to the Ehrlich Parties and other creditors. Given that the Debtor has assets in the United States, including income derived from her Recording Agreement with UMG and other entertainment industry agreements governed by New York law, recognition of the Canadian Proceeding in the United States is necessary to ensure that the stay

imposed under the BIA is respected in this jurisdiction, to prevent creditors from commencing or continuing actions against the Debtor or her assets in the United States, and to facilitate an orderly restructuring of the Debtor's financial affairs for the benefit of all stakeholders.

D.    **The Status of the Canadian Proceeding**

27.    On June 24, 2026, the Debtor filed her Proposal in the Canadian Proceeding. The Proposal provides for a single class of unsecured creditors. The Proposal contemplates the following cash payments to unsecured creditors:

a.    $3,076,155 CAD within 30 days of the Implementation Date (as defined in the Proposal);

b.    $446,026.99 CAD within 60 days of the Implementation Date;

c.    $230,218 CAD within 30 days of receipt of the TuneCore receivable;

d.    $314,000 USD within 30 days of receipt of the LiveNation receivable;

e.    Net proceeds of sale of the cottage (estimated at $750,000 CAD) within one year of the Implementation Date; and

f.    100% of the Debtor's surplus earnings for a period of five years, with total payments under the Proposal not to exceed $5,500,000 USD.

28.    On June 30, 2026, the Proposal Trustee submitted the *Report of Trustee on Proposal* (the "Report") recommending acceptance of the Proposal, finding that "[i]n the Trustee's opinion the Proposal will provide a more certain and significantly greater return to creditors." *See* Foreign Representative Declaration, Ex. B.

29.    A meeting of creditors to consider the Proposal was held on July 13, 2026, at 10:00 a.m. (Pacific Time) and, at the request of the Ehrlich Parties, adjourned to August 14, 2026. The Proposal requires approval by a required majority of creditors, being a majority in number and two-thirds in value of unsecured creditors present and voting at the creditors' meeting, and thereafter requires court approval.

9

## III.
## RELIEF REQUESTED

30.     The Foreign Representative seeks entry of an order substantially in the form of the Proposed Order attached hereto and pursuant to sections 105(a), 1507(a), 1509(b), 1515, 1517, 1520, 1521 of the Bankruptcy Code, which, among other things:

a.      grants the Petition in this case and recognizes the Canadian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code;

b.      recognizes the Foreign Representative as the "foreign representative" as defined in section 101(24) of the Bankruptcy Code in respect of the Canadian Proceeding;

c.      gives full force and effect and grants comity in the United States to the Foreign Representative Order;

d.      enjoins all parties from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property; and

e.      grants such other and further relief as the Court deems just and proper.

## IV.
## BASIS FOR RECOGNITION
## AND RELIEF REQUESTED

A.     **The Petition Satisfies the Requirements of Chapter 15 and the Canadian Proceeding is Entitled to Recognition as a Foreign Main Proceeding**

31.     Section 1517(a) of the Bankruptcy Code provides that the Court shall enter "an order recognizing a foreign proceeding as a foreign main proceeding if (1) such foreign proceeding is a foreign main proceeding within the meaning of section 1502 [of the Bankruptcy Code], (2) the foreign representative applying for recognition is a person or body, and (3) the petition meets the requirements of section 1515" of the Bankruptcy Code.  11 U.S.C. § 1517; *In re Oversight & Control Comm'n of Avánzit, S.A.*, 385 B.R. 525, 532 (Bankr. S.D.N.Y. 2008).

32.     As a threshold matter, this Court has, in the past, entered orders recognizing Canadian insolvency proceedings, under the BIA, pursuant to Bankruptcy Code section 1517(a).

10

*See, e.g., In re Iovate Health Sciences International Inc.*, Case No. 25-11958 (MG) (Bankr. S.D.N.Y. Oct. 28, 2025). Moreover, for the reasons set forth below, the Canadian Proceeding should be recognized as a foreign main proceeding and the Foreign Representative Order should be recognized and enforced because this chapter 15 case was properly commenced by a duly authorized foreign representative, the Canadian Proceeding qualifies as a foreign proceeding, and the foreign proceeding is pending in the country where the Debtor has her center of main interests.

 i. **The Canadian Insolvency Proceeding is a "Foreign Proceeding"**

33. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). As discussed in the Canadian Counsel Declaration, the Canadian Proceeding is a judicial proceeding brought under the BIA and is supervised by a Canadian court. *See* Canadian Counsel Declaration, ¶¶ 4,7, and 24. The BIA is the principal statute in Canada addressing bankruptcies, similar to Chapters 7 and 13 of the Bankruptcy Code, and also provides for reorganizations. *Id.* at ¶ 4. The BIA provides for a controlled procedure designed to maximize the value of the Debtor's assets, to realize these for the purpose of equitable distribution among the Debtor's creditors.

34. There can be no doubt that the Canadian Proceeding qualifies as a foreign proceeding. The court in Canada has exercised its authority, held hearings and issued rulings (including the appointment of the Foreign Representative). *Id.* at ¶ 24. Additionally, the Canadian Proceeding is not for the benefit of a single creditor, but rather the Debtor's entire creditor body, and is for the purpose of liquidating or restructuring the Debtor's assets. Indeed, under the BIA, a trustee must be appointed to work with the debtor upon the filing of the Proposal. *Id.* at ¶¶ 9-10.

The Proposal Trustee is an independent person (or corporation) licensed by the Office of the Superintendent of Bankruptcy. *Id.* at ¶ 9. The Proposal Trustee does not displace the debtor and the debtor remains a debtor-in-possession. *Id.* at ¶ 8. However, the Proposal Trustee is an officer of the court and is a fiduciary to the creditors of the debtor. *Id.* at ¶ 9.

35.     Additionally, there can be no doubt that the Canadian Proceeding is collective in nature, in that all affected creditors are allowed to participate, and all known creditors with a minimum claim of CAD$250 and other parties in interest receive the Proposal. *Id.* at ¶ 7.

36.     Accordingly, the Canadian Proceeding qualifies as a judicial proceeding in a foreign country.

37.     In addition to qualifying as a "foreign proceeding" under section 101(23), the Canadian Proceeding qualifies as a "foreign main proceeding," which is defined in the Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4); *see also* 11 U.S.C. § 1517(b)(1) (providing that an order of recognition of a foreign main proceeding shall be entered if the foreign proceeding that is subject to the petition "is pending in the country where the debtor has the center of its main interests"). Center of main interest ("COMI") is a term of art, which the Bankruptcy Code does not define. The Bankruptcy Code, however, provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c).

38.     Habitual residence is comparable to domicile, and connotes permanence and stability, and is "the place where an individual is living and has manifested the expectation of remaining for an indefinite period of time." *In re Kemsley*, 489 B.R. 346, 353 (Bankr. S.D.N.Y. 2013).

39. The Bankruptcy Code does not define "habitual residence" or provide a conclusive test for determining a debtor's COMI. In determining the location of an individual debtor's COMI, courts have considered the following list of non-exhaustive factors: (a) the location of the debtor's primary assets, (b) familial ties to the location, (c) the location of the majority of the debtor's creditors, and/or (d) the jurisdiction whose law would apply to most disputes. *See In re Ran*, 607 F.3d 1017, 1023 (5th Cir. 2010); *In re Kemsley*, 489 B.R. at 360; *In re Loy*, 380 B.R. 154, 162 (Bankr. E.D. Va. 2007).

40. Courts also consider the expectations of interested third parties such as creditors. *See, e.g., In re SPhinX, Ltd.,* 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007) (stressing that courts should interpret the COMI factors "in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value"). Therefore, courts examine whether the debtor's COMI would have been ascertainable to creditors and other interested third parties. *See, e.g., In re Ran*, 607 F.3d at 1025 (stating that "it is important that the debtor's COMI be ascertainable by third parties").

41. Here, the Debtor is a Canadian citizen, with a Canadian passport, bank accounts in Canada, ownership of property in Canada, family in Canada, and an address in Canada. *See In re Kemsley*, 489 B.R. at 353 (considering proximity to family as part of a debtor's COMI); *see also Lavie v. Ran*, 406 B.R. 277, 283 (S.D. Tex. 2009), *aff'd sub nom. In re Ran*, 607 F.3d 1017 (5th Cir. 2010) (noting foreign insolvency courts have evaluated a debtor's familial ties to the area). Accordingly, the COMI for the Debtor is Canada.

ii. **Ms. Lauren Spencer-Smith is an Appropriate "Foreign Representative"**

42. The term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

[A] person or body, including a person or body appointed on an interim basis authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

43.     As set forth in the Foreign Representative Order, the Foreign Representative was appointed by the court in Canada, on notice to creditors and the Proposal Trustee, and is duly authorized to act for the Debtor. Additionally, it provides that the Foreign Representative is authorized to commence this Petition and seek recognition of the Canadian Proceeding. *See* Foreign Representative Declaration, Ex. C. The Foreign Representative has been informed that the Proposal Trustee supports commencement of the Chapter 15 Case and recognition of the Canadian Proceeding by this Court in the Chapter 15 Case.

iii.     **The Petition Meets the Requirements of 11 U.S.C. § 1515**

44.     The third and final requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the petition for recognition meets the procedural requirements of section 1515 of the Bankruptcy Code.  11 U.S.C. § 1517(a)(3). Specifically, section 1515 of the Bankruptcy Code provides that:

(b)     A petition for recognition shall be accompanied by—

(1)     a certified copy of the decision commencing such foreign proceeding and appointing the foreign representative;

(2)     a certificate from the foreign court affirming the existence of such foreign proceeding and of the appointment of the foreign representative; or

(3)     in the absence of evidence referred to in paragraphs (1) and (2), any other evidence acceptable to the court of the existence of such foreign proceeding and of the appointment of the foreign representative.

14

(c)    A petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative.

(d)    The documents referred to in paragraphs (1) and (2) of subsection (b) shall be translated into English. The court may require a translation into English of additional documents.

11 U.S.C. § 1515.

45.    Here, all of those procedural requirements have been satisfied.  In accordance with sections 1515(b)(1)-(2) and (d) of the Bankruptcy Code, the Foreign Representative has submitted documents, which evidence the existence of the Canadian Proceeding and the appointment of the Foreign Representative as foreign representative thereof.  *See* Exhibits A through C to the Foreign Representative Declaration. Additionally, in accordance with section 1515(c) of the Bankruptcy Code, the Foreign Representative Declaration contains a statement identifying the Canadian Proceeding as the only foreign insolvency proceeding currently pending.  *See* Foreign Representative Declaration, at ¶ 55. Finally, pursuant to Bankruptcy Rule 1007(a)(4), the required lists and statements were included with the Petition.

46.    As set forth above, each of the prerequisites to recognition under section 1517 has been met.  Accordingly, the Foreign Representative respectfully requests that the Court recognize (i) the Canadian Proceeding as a foreign main proceeding and (ii) the Foreign Representative as a foreign representative.

B.    **Alternatively, the Canadian Proceeding Should be Recognized as a Foreign Nonmain Proceeding**

47.    Alternatively, if the Canadian Proceeding does not qualify as a foreign main proceeding – which it should – the Foreign Representative seeks recognition as a foreign nonmain proceeding.  A foreign nonmain proceeding is a "foreign proceeding, other than a foreign main proceeding, pending in a country where the debtor has an establishment."  11 U.S.C. § 1502(5). An "establishment" is defined as "any place of operations where the debtor carries out a

15

nontransitory economic activity." 11 U.S.C. § 1502(2).  In the context of an individual debtor, the term "establishment" has been interpreted as a place where a person maintains a residence or place of employment, the existence of which requires a purely factual determination. *In re Ran*, 607 F.3d at 1027 ("Equating a corporation's principal place of business to an individual debtor's primary or habitual residence, a place of business could conceivably align with the debtor having a secondary residence or possibly a place of employment in the country where the receiver claims that he has an establishment").

48.    The Debtor has an "establishment" in Canada within the meaning of section 1502. *First*, at the time of commencement of the Canadian Proceeding, the Debtor owned property in Canada and her registered address is in Canada.  *Second*, the Debtor's family is located in Canada. *Third*, the Debtor has a permanent effect on the local marketplace, regularly paying utilities in Canada, paying taxes in Canada, leasing a car in Canada, and regularly using the services of professionals in Canada. Accordingly, the evidence establishes that, at all relevant times, the Debtor was carrying out nontransitory economic activity in Canada and the Verified Petition qualifies for recognition as a foreign nonmain proceeding.

C.    **Upon Recognition Foreign Representative is Entitled to Relief Under 11 U.S.C. §§ 1520 and 1521**

i.    **Section 1520 Provides Automatic Relief to the Foreign Representative Upon Recognition**

49.    Upon recognition of the Canadian Proceeding as a foreign main proceeding, section 1520 of the Bankruptcy Code prescribes certain forms of relief available to the Foreign Representative and respecting the Debtor's property within the territorial jurisdiction of the United States.  Such relief is granted automatically as a consequence of recognition and requires no further showing by the Foreign Representative to obtain such relief.

50.    Specifically, section 1520 of the Bankruptcy Code provides for the following relief:

(1)  sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;

(2)  sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;

(3)  unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and

(4)  section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States

11 U.S.C. § 1520.

51.  Therefore, upon recognition, the Debtor is entitled to the benefit of the automatic stay provided under section 362(a) of the Bankruptcy Code in respect of all actions and proceedings concerning the Debtor, including the SDNY Action and the 2d Cir. Appeal and any efforts to collect or seize the Debtor's asset.[4]

ii.  **Granting the Foreign Representative Relief under 11 U.S.C. § 1521 is Necessary and Appropriate**

52.  In addition to the relief automatically provided by section 1520 of the Bankruptcy Code, section 1521 of the Bankruptcy Code provides that the court may grant a foreign representative, in either a foreign main or foreign nonmain proceeding, "any appropriate relief" subject to certain limitations (which do not apply here) where necessary to effectuate the purpose of chapter 15.

---

[4] In addition to a stay of the SDNY Action, the stay would effectively stay the 2d Cir. Appeal. An appeal is a continuation of a judicial action or proceeding and therefore this action is automatically stayed if it is one "against the debtor." The Second Circuit has held that whether an action is "against the debtor" is determined by examining the debtor's status at the time proceedings were initiated, and not by looking to which party has appealed. Therefore, although the Ms. Spencer-Smith is currently the appellant in the 2d Cir. Appeal, this action is stayed because it was originally brought "against the debtor." *Ostano Commerzanstalt v. Telewide Sys., Inc.*, 790 F.2d 206, 207 (2d Cir. 1986).

53.     In connection with recognition of the Canadian Proceeding, the Foreign Representative seeks certain related relief, including enforcement of the Foreign Representative Order and application of sections 361, 362, and 365(e) of the Bankruptcy Code in this Chapter 15 Case. The Foreign Representative respectfully submits that such relief is warranted under sections 105(a), 1507, and 1521 of the Bankruptcy Code and the general principles of comity that underpin chapter 15.

54.     Upon recognition of a foreign proceeding, section 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representative "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors." Such relief may include:

a.     staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520(a) of the Bankruptcy Code;

b.     staying execution against the debtor's assets to the extent it has not been stayed under section 1520(a) of the Bankruptcy Code;

c.     suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under section 1520(a) of the Bankruptcy Code;

d.     granting any additional relief that may be available to a trustee, except for relief available under sections 522, 544, 545, 547, 548, 550, and 724(a) of the Bankruptcy Code.

The Court may grant relief under section 1521(a) of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected."

55.     Similarly, section 1507 of the Bankruptcy Code provides that, "if recognition is granted," a court "may provide additional assistance to a foreign representative under this title or under other laws of the United States." Finally, section 105(a) of the Bankruptcy Code provides

18

that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

56.     The Foreign Representative requests the Court exercise its discretion under 11 U.S.C. §§ 105, 1507, and 1521 to grant the relief requested insofar as such relief exceeds that which is available by recognizing the Canadian Proceeding as a foreign main proceeding (or, in the alternative, as a foreign nonmain proceeding) and the Foreign Representative as a "foreign representative" as specified in the Bankruptcy Code.

57.     Specifically, the application of sections 361, 362, and 365(e) of the Bankruptcy Code in this Chapter 15 Case. Sections 362 and 365(e) provide critical protections that shield a debtor from creditor collection efforts and the termination of its contractual relationships, thereby preventing the piecemeal depletion of the debtor's assets. These provisions apply as of right in plenary bankruptcy cases, and their application is warranted and necessary in this Chapter 15 Case. Without a stay of proceedings and preservation of contractual relationships afforded by the Bankruptcy Code, the Debtor is vulnerable to creditor collection actions and critical business contracts being terminated based on the filing of the Canadian Proceeding and the Chapter 15 Case. Such actions could interfere with the ability of the Debtor to restructure its debts and meet its obligations under the proposed Proposal. For example, the Marshal's Notice of Levy and Sale served upon Live Nation Worldwide, Inc., after the commencement of the Canadian Proceeding, was a receivable, included in Proposal, for distribution to creditors.

58.     The granting of the application of sections 361, 362, and 365(e) is consistent with the goals of international cooperation and assistance to foreign courts embodied in chapter 15 of the Bankruptcy Code, and is necessary to effectuate the Canadian Proceeding. If granted, such relief would promote all of the legislatively enumerated objectives of section 1501(a) of the Bankruptcy Code.

59.     To achieve a fair and efficient administration of the Canadian Proceeding that protects all parties in interest, all creditors must be bound by the terms of the Canadian Proceeding as sanctioned by the Canadian Court.

60.     If the Canadian Proceeding is not fully supported by this ancillary proceeding in the United States, there is a risk that certain of the Debtor's creditors could bring proceedings or actions in the United States against the Debtor. If such parties can effectively evade the Canadian restructuring law and attempt to derail the Debtor's restructuring efforts, the Debtor would be required to defend any such proceedings and deplete the Debtor's resources, prejudicing a value maximizing restructuring. Therefore, the relief requested by the Debtor is required to prevent individual creditors acting to frustrate the purposes of the Canadian Proceeding.

D.     **Granting Recognition Would be Consistent With, and Not Manifestly Contrary to, United States Public Policy**

61.     The purpose of Chapter 15 is set forth in section 1501 of the Bankruptcy Code and includes the cooperation between foreign courts involved in cross-border insolvency proceedings, the protection and maximization of the value of the debtor's assets. 11 U.S.C. § 1501. *See* Canadian Counsel Declaration, ¶ 4 (providing the BIA is the principal insolvency statute in Canada to address a debtor's financial affairs).

62.     While section 1506 of the Bankruptcy Code provides that nothing in Chapter 15 requires this Court to take any action that would be manifestly contrary to the public policy of the United States, this exception is narrowly construed. *In re OAS S.A.*, 533 B.R. 83, 103 (Bankr. S.D.N.Y. 2015) (citing *In re Fairfield Sentry Ltd.*, 714 F.3d at 139). The public policy exception must be viewed in light of one of the fundamental goals of the Bankruptcy Code – the centralization of disputes involving the debtor. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .") (internal citations and

20

quotation marks omitted). Indeed, it is a firm American policy to "extend comity to foreign bankruptcy proceedings because the equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail." *In re Atlas Shipping A/S*, 404 B.R. 726, 733 (Bankr. S.D.N.Y. 2009) (internal quotation marks omitted) (citing *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir. 1987)); *see also JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 424 (2d Cir. 2005) ("We have repeatedly held that U.S. courts should ordinarily decline to adjudicate creditor claims that are the subject of a foreign bankruptcy proceeding.").

63.     The relief requested by the Foreign Representative is not manifestly contrary to, but rather consistent with, United States public policy. Recognition of the Canadian Proceeding as a foreign main proceeding will enable the Debtor to obtain an automatic stay to formulate a plan to manage her financial affairs. Thus, the Canadian Proceeding, like a Chapter 11 or Chapter 13 bankruptcy under the Bankruptcy Code, provides for a centralized process. As a result, the Canadian Proceeding is demonstrably consistent with the public policy of the United States.

## V.
## <u>RESERVATION OF RIGHTS</u>

64.     Pursuant to sections 1519(a) and 1521(a) of the Bankruptcy Code, the Foreign Representative hereby reserves all rights to seek, at any point (either before or after a change in circumstances under section 1518 of the Bankruptcy Code), further and other relief from this Court that may be necessary to implement the Canadian Insolvency Proceeding and to effectuate the purposes of chapter 15.

21

## VI.
## SATISFACTION OF LOCAL BANKRUPTCY RULE 9013-1(a)

65.     This Verified Petition contains citations to the relevant authorities and therefore, satisfies Rule 9013-1(a) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.  Notwithstanding the foregoing request, the Foreign Representative reserves the right to file an appropriate memorandum of law should it become necessary under the circumstances.

## VII.
## HEARING DATE AND NOTICE

66.     The Foreign Representative requests that the Court set a date for a hearing (the "Hearing Date") pursuant to section 1517(c) of the Bankruptcy Code and Local Bankruptcy Rule 2002-2 to approve the Petition and recognize the Canadian Proceeding as a foreign main proceeding.  If no objections to this Petition are filed by the date ordered for such objections, the Foreign Representative requests that the Court enter the Proposed Order recognizing the Canadian Proceeding as a foreign main proceeding without a hearing.

67.     The Foreign Representative submits that when the Hearing Date has been set by the Court, notice will be given as reasonable and appropriate and consistent with Bankruptcy Rule 2002(q) and Local Bankruptcy Rule 2002-4.

68.     In furtherance of this request, contemporaneously herewith, the Foreign Representative has filed the *Application for Order Scheduling Hearing and Specifying Form and Manner of Service of Notice of Hearing*.

22

## VIII.
## CONCLUSION

WHEREFORE, the Foreign Representative respectfully requests that this Court grant the

relief requested herein and such other and further relief as may be just and proper.

Dated: July 20, 2026

Lauren Spencer-Smith

Dated: New York, New York
July 23 , 2026

BLANK ROME LLP

By:   */s/Evan J. Zucker*
Michael B. Schaedle
Evan J. Zucker
Jennifer Malow
1271 Avenue of the Americas
New York, NY 10020
(212) 885-5000

*Attorneys for Foreign Representative*