Michael B. Schaedle
Evan J. Zucker
Jennifer K. Malow
BLANK ROME LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 885-5000

*Counsel to the Foreign Representative*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

Lauren Spencer-Smith,

Debtor in a Foreign Proceeding.

Chapter 15
Case No. 26-11734 (pb)

**DECLARATION OF LAUREN SPENCER-SMITH, PURSUANT
TO 11 U.S.C. § 1515 AND IN SUPPORT OF VERIFIED PETITION,
RECOGNITION HEARING, AND MOTION FOR PROVISIONAL RELIEF**

I, Lauren Spencer-Smith, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.      I am over the age of 18 and, if called upon, could testify to all matters set forth in this statement.

2.      I am the debtor and the court appointed foreign representative in my pending insolvency proceeding (the "Canadian Proceeding") under Canada's Bankruptcy and Insolvency Act (R.S.C. 1985, c. B-3 as amended) ("BIA").

3.      All facts set forth in this declaration are based upon:  (a) my personal knowledge of my assets and financial condition; (b) my review of relevant documents and any and all documents prepared and/or filed in connection with the Canadian Proceeding and this chapter 15 case (the "Chapter 15 Case"); or (c) information supplied to me by my professional advisers.

4.      I submit this declaration in support of (a) the Verified Petition Under Chapter 15 for Recognition of Foreign Main Proceeding, and (b) the Motion of Foreign Representative for Provisional Relief (the "Provisional Relief Motion"), each filed contemporaneously herewith.

## GENERAL BACKGROUND

5.      I am a dual citizen of Canada and the United Kingdom and, when not traveling for work and I reside in Nanaimo, British Columbia, Canada.  I moved to Canada from the United Kingdom, at the age of three with my parents. I have lived in Canada for approximately 20 years and currently live with my partner in Nanaimo, Canada.

6.      I am a professional singer and songwriter.  Beginning in 2014, through YouTube, I became known for posting covers and later received attention through an appearance on the eighteenth season of *American Idol* in 2020, where I placed in the top 20.  My 2022 single "Fingers Crossed" reached the top 20 in numerous countries, including the United States, and charted in the top 10 in Australia, New Zealand, and the United Kingdom. In 2019, my live album *Unplugged, Vol. 1*, earned a *Juno Award* nomination for Adult Contemporary Album of the Year, and my debut studio album, *Mirror*, released in 2023, features both "Fingers Crossed" and a follow-up single "Flowers."

A.      **Events Leading to the Canadian Proceeding**

7.      In March 2020, while performing on the television show American Idol, I met David Ehrlich ("Ehrlich"), an entertainment industry lawyer. On or about April 17, 2020, I entered into an engagement agreement (the "Engagement Agreement") with Ehrlich pursuant to which I engaged Ehrlich and his firm, David M. Ehrlich & Associates, P.C. ("Ehrlich & Associates"), as a legal representative to render legal services generally in connection with my career in the entertainment industry. The Engagement Agreement provided that Ehrlich &

Associates was to receive a fee equal to five percent (5%) of all gross monies and any other compensation I earned or received as a result of my entertainment services.[1]

8.      On or about January 1, 2021, I entered into a management agreement (the "Management Agreement") with Ehrlich and Song Collect, Inc. d/b/a DME Management ("DME Management," and collectively with Ehrlich and Ehrlich & Associates, the "Ehrlich Parties"), pursuant to which DME Management agreed to serve as my personal manager for a term of five years. Under the Management Agreement, DME Management was to receive a commission equal to fifteen percent (15%) of my gross income from entertainment services.

9.      On May 13, 2022, following a promotional tour in Europe and Canada during which disputes arose regarding Ehrlich's conduct, I delivered a termination letter to Ehrlich, seeking to immediately terminate the relationship.

10.     On March 30, 2023, I filed a complaint against the Ehrlich Parties in the United States District Court for the Southern District of New York (the "District Court"), Case No. 23-cv-2652 (LJL), asserting claims for breach of fiduciary duty, breach of the Management Agreement, breach of the Engagement Agreement, and faithless servant (the "Spencer-Smith Action"). That same day, the Ehrlich Parties filed a separate complaint in the District Court, Case No. 23-cv-2653 (LJL), asserting claims for breach of the Management Agreement, breach of the Engagement Agreement, declaratory judgment, and defamation (the "Ehrlich Action," and together with the Spencer-Smith Action, the "SDNY Action"). The two actions were consolidated by stipulation and order on May 18, 2023.

---

[1] The Engagement Agreement also provided for "a success fee of no less than 10% (instead of 5%) of the Gross Compensation that [Spencer-Smith] receive[s] in the first year from an agreement . . . if [Ehrlich & Associates] [has] been directly responsible for [Spencer-Smith] obtaining such agreement." Judgment at p.3.

11.     On February 5, 2026, the District Court issued an Opinion and Order on the parties' cross-motions for summary judgment (the "Summary Judgment Order"). The District Court granted the Ehrlich Parties' motion for summary judgment, finding that: (a) DME Management did not receive the required notice and opportunity to cure under the Management Agreement before the agreement was terminated; (b) there were no genuine facts establishing that DME Management breached the "reasonable efforts" promotion clause of the Management Agreement; (c) Ehrlich & Associates did not breach the Engagement Agreement; and (d) the Ehrlich Parties did not breach their fiduciary duties. The District Court denied the Ehrlich Parties' motion with respect to damages, finding that genuine issues of disputed fact remain regarding the quantum of damages, and scheduled a trial on the issue of damages.

12.     In April 2026, the Ehrlich Parties served an order of attachment on, among others, garnishees including Broadcast Music, Inc., Entertainment Partners, LLC, GEP Talent Services, LLC and LiveNation Entertainment, Inc.

13.     On May 26, 2026, the District Court entered a Stipulated Final Partial Judgment (the "Judgment") in the amount of $2,967,554.06 plus pre-judgment and post-judgment interest, as well as attorneys' fees in an amount to be determined, in favor of the Ehrlich Parties.

14.     On June 21, 2026, I filed a Notice of Civil Appeal to the United States Court of Appeals for the Second Circuit appealing the District Court's February 5, 2026, Opinion and the Judgment. *See Spencer-Smith v. Ehrlich*, Case No. 26-1690 (2d. Cir) and *Ehrlich v. Spencer-Smith*, Case No. 26-1691 (2d. Cir) (collectively, the "2d Cir. Appeal"). A briefing schedule on the appeal has not yet been entered.

15.     On June 26, 2026, the Ehrlich Parties filed a motion in the District Court seeking $3,038,776.80 in attorneys' fees and $132,312.13 in costs and disbursements. Briefing on such motion is still ongoing. Currently, opposition to such motion is due August 7, 2026.

16.     On July 2, 2026, the Clerk's Office for the District Court issued an Abstract of Judgment.

17.     A Marshal's Notice of Levy and Sale, dated July 8, 2026, was served upon Live Nation Worldwide, Inc. with respect to the Judgment and on July 15, 2026, LiveNation turned over to the Marshal $314,186 (*i.e.*, the LiveNation receivable due to Lauren Spencer Smith Touring Inc. referenced in the Proposal (as herein defined) submitted in the Canadian Proceeding for distribution to creditors).

B.      **Canadian Proceeding**

18.     Ultimately, the entry of a judgment, combined with the claim for attorneys' fees and costs, precipitated the commencement of the Canadian Proceeding in the Supreme Court of British Columbia in Bankruptcy ("Canadian Court"), as I required time to address my outstanding liabilities to the Ehrlich Parties and other creditors.

19.     On June 24, 2026, I filed a Proposal (the "Proposal") in the Canadian Proceeding pursuant to section 50 of the BIA. MNP Ltd. ("Proposal Trustee") was appointed as the proposal trustee. The next day, on June 25, 2026, the Office of Superintendent of Bankruptcy Canada issued a Certificate of Filing of a Proposal - Section 62 (the "Certificate of Filing") that, pursuant to subsection 69.1 of the BIA, stayed all proceedings against me and my assets. Attached hereto as **Exhibit A** is a true and correct copy of the Certificate of Filing.

20.     The Proposal provides for a single class of unsecured creditors. The Proposal contemplates the following cash payments to unsecured creditors:

    a.      $3,076,155 CAD within 30 days of the Implementation Date (as

-5-

defined in the Proposal);

b.   $446,026.99 CAD within 60 days of the Implementation Date;

c.   $230,218 CAD within 30 days of receipt of the TuneCore receivable;

d.   $314,000 USD within 30 days of receipt of the LiveNation receivable;

e.   Net proceeds of sale of the cottage (estimated at $750,000 CAD) within one year of the Implementation Date; and

f.   100% of the Debtor's surplus earnings for a period of five years, with total payments under the Proposal not to exceed $5,500,000 USD.

21.   In connection with the Proposal, I filed a Statement of Financial Affairs listing my assets and liabilities. My total assets are approximately $5,462,376 CAD and includes: (a) cash on hand at an RBC Royal Bank account, in Canada, (b) shares in three corporations: Three Name Productions Inc., a Canadian corporation, LSS Music Inc., a Canadian corporation, and Lauren Spencer Smith Touring Inc., a Delaware corporation, (c) a 50% interest in my homestead in Nanaimo, Canada, (d) a condominium in Nanaimo, Canada, (e) two motor vehicles, and (f) various receivables from my performances.

22.   My liabilities include: (a) the Judgment; (b) a mortgage obligation to Manulife Bank of Canada; and (c) a vehicle financing obligation with respect to a car.

23.   During the pendency of my insolvency proceeding, I remain in control of my assets and remain responsible for managing my financial affairs, with the assistance of my advisers.

24.   On June 30, 2026, the Proposal Trustee submitted the *Report of Trustee on Proposal* (the "Report") recommending acceptance of the Proposal, finding that "[i]n the Trustee's opinion the Proposal will provide a more certain and significantly greater return to creditors." Attached hereto as **Exhibit B** is a true and correct copy of the Report.

-6-

25.     A meeting of creditors to consider the Proposal occurred on July 13, 2026 at 10:00 a.m. (Pacific Time) and has been adjourned, at the request of the Ehrlich Parties, to August 14, 2026, to further consider the Proposal. I am advised that the Proposal requires approval by a required majority of creditors, being a majority in number and two-thirds in value of unsecured creditors present and voting at the creditors' meeting and thereafter requires court approval.

26.     On July 14, 2026, the Canadian Court granted an Order (the "Foreign Representative Order"), inter alia, (a) authorizing me to act as a foreign representative, and (b) authorizing the Foreign Representative to apply to the United States Bankruptcy Court for relief pursuant to chapter 15 of the Bankruptcy Code. Attached hereto as **Exhibit C** is a true and correct copy of the Foreign Representative Order.

27.     I have now commenced this Chapter 15 Case to preserve value for all stakeholders.  I am informed that the Proposal Trustee has no objection to the commencement of the Chapter 15 Case, supports the provisional relief I will seek as Foreign Representative, and supports recognition of the Canadian Proceeding by this Court.

**THE CHAPTER 15 CASE**

28.     I have directed my United States counsel, including Blank Rome LLP to: (i) commence this Chapter 15 Case; (ii) seek relief to prohibit parties from continuing, commencing or initiating litigation against myself, and (iii) seek such additional assistance as I may request from time to time to facilitate the Canadian Proceeding and the orderly administration of my affairs, including, without limitation, implementing and/or effectuating the Foreign Representative Order.

A.      **Appointment as a Foreign Representative**

29.     I have been informed by legal advisors that a Chapter 15 proceeding is commenced by the filing of a petition for recognition (and related documents) by a "foreign representative." I understand that "foreign representative" is defined in section 101(24) of the Bankruptcy Code to mean:

> . . . a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

30.     Notwithstanding the Proposal, I continue to control my assets and remain responsible for managing my financial affairs. Additionally, as set forth in the Foreign Representative Order, I am authorized to act as the "foreign representative" in this Chapter 15 Case.

31.     In light of the foregoing, I believe that I have the authority to administer my assets or affairs during the pendency of the Proposal and, therefore, I satisfy the requirements to serve as the foreign representative of the Canadian Proceeding.

B.      **The Canadian Proceeding is a Foreign Main Proceeding**

32.     I filed the Verified Petition pursuant to Sections 1504 and 1515 of the Bankruptcy Code commencing this Chapter 15 Case in this Court, seeking recognition of the Canadian Proceeding as a "foreign main proceeding," and seeking other necessary or appropriate relief in support of the Canadian Proceeding.

33.     I am informed that "foreign proceeding" is defined in section 101(23) of the Bankruptcy Code to mean:

> [C]ollective judicial or administrative proceeding in a foreign
> country, including an interim proceeding, under a law relating to
> insolvency or adjustment of debt in which proceeding the assets
> and affairs of the debtor are subject to control or supervision by
> a foreign court, for the purpose of reorganization or liquidation
> . . . .

11 U.S.C. § 101(23).

34.    I believe that the Canadian Proceeding falls within the foregoing definition. As more fully explained in the declaration of my Canadian counsel, Peter J. Reardon, filed contemporaneously with this Declaration, the Canadian Proceeding is (i) a collective judicial proceeding, (ii) in Canada, and (iii) is governed by the BIA. In the Canadian Proceeding, my assets and affairs are subject to the control or supervision of the Canadian Court. The purpose of the Proposal is to effectuate a restructuring of my debts.

35.    Additionally, I believe recognition of the Canadian Proceeding will not undermine the rights that United States creditors typically enjoy in a U.S. bankruptcy proceeding, as affected creditors will have, and have already had, the opportunity to participate in the Canadian Proceeding under the supervision of the Canadian Court.

36.    I am also informed that section 1517(b)(1) of title 11 of the United States Code (the "Bankruptcy Code") provides that a foreign proceeding shall be recognized as a "foreign main proceeding" if the foreign proceeding is pending in the country where the debtor has "the center of its main interests" ("COMI"). 11 U.S.C. § 1502(4). I am informed by legal advisors that while COMI is not defined in Chapter 15, that section 1516(c) of the Bankruptcy Code provides that "[i]n the absence of evidence to the contrary, the debtor's registered office, or habitual residence in the case of an individual, is presumed to be the center of the debtor's main interests."

37.     I believe that the Canadian Proceeding is a "foreign main proceeding" because, among other things, my "habitual residence" is in Nanaimo, Canada. Other factors that support Canada as my COMI, include, but are not limited to:

    a.     I am a citizen of Canada and live in Nanaimo, Canada where I have a 50% ownership interest in my homestead;

    b.     My parents and my partner live in Nanaimo, Canada;

    c.     I have bank accounts in Canada;

    d.     I own 100% interest in two Canadian corporations (Three Name Productions Inc. and LSS Music Inc.);

    e.     In addition to my homestead, I own a condominium in Nanaimo, Canada;

    f.     I lease a motor vehicle located in Canada; and

    g.     I have creditors, located in Canada, including Manulife Bank of Canada.

38.     Accordingly, given that Nanaimo is my home and that I have the intention of remaining there for an indefinite period of time, and given my familial connections to Canada, it is my belief that my habitual residence is in Nanaimo, Canada and is my center of main interests as dictated by section 1516(c) of the Bankruptcy Code.

## C.     Alternatively, the Canadian Proceeding is a Foreign Nonmain Proceeding

39.     In the event that the Court concludes that my COMI is not Canadian, I believe that this Court should recognize the Canadian Proceeding as a "foreign nonmain proceedings."

40.     I am informed that a foreign nonmain proceeding takes place in a jurisdiction that is not an individual's center of main interests, but where the individual has an "establishment," as defined as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), (5).

41.     It is my belief that I have an "establishment" in Canada within the meaning of section 1502. At the time of commencement of the Canadian Proceeding and this Chapter 15 Case, I own property in Canada and my registered address is in Canada. Additionally, my family is located in Canada. Finally, I have a permanent effect on the local marketplace by regularly paying utilities in Canada, paying taxes in Canada, leasing a car in Canada, and regularly using the services of professionals in Canada.

D.     **Property in the United States**

42.     I believe that I am eligible to be a "debtor" under section 109 of the Bankruptcy Code, because, among other things, I have property and/or interests located in the State of New York, including but not limited to:

    a.     A bank account at City National Bank in New York;

    b.     I receive funds from various U.S. based entertainment companies, including TuneCore, from the sale of my music;

    c.     My business team is based in New York;

    d.     An interest in the unearned portion of retainer on deposit with the New York office of Blank Rome LLP; and

    e.     I am a party to a recording agreement, dated February 4, 2022 (the "Recording Agreement"), with Island Records and Republic Records, divisions of UMG Recordings, Inc. ("UMG"). The Recording Agreement remains in effect and is governed by New York law.

43.     Finally, there is litigation within this district, specifically the SDNY Action.

44.     Accordingly, I have been informed that I am eligible to be a debtor under section 109 of Bankruptcy Code and that venue is proper in this Court under applicable law.

**NEED FOR PROVISIONAL RELIEF**

45.     I respectfully submit that it is appropriate to ask for provisional relief, for the following reasons:

-11-

a.   As discussed in the Provisional Relief Motion, immediate provisional relief is appropriate and supported by the filed papers.

b.   Such relief is especially appropriate in this context to provide me with the breathing room and stability necessary to implement my restructuring, including by seeking certain provisional relief between the commencement of this Chapter 15 Case and the Bankruptcy Court's entry of the proposed order recognizing the Canadian Proceeding. Such provisional relief includes, among other things, the Bankruptcy Court's immediate ordering of the application of sections 361, 362, and 365(e) of the Bankruptcy Code to this Chapter 15 Case. While I have received stay protection in Canada pursuant to the BIA, I may be exposed to potentially adverse action in the United States by creditors and other parties in interest who may disregard the stay imposed by the BIA.

c.   The provisional relief requested will preserve the status quo with respect to the SDNY Action, 2d Cir. Appeal, and efforts to collect or seize my assets, and to ensure an equitable distribution of my assets and assist my restructuring efforts.

d.   The provisional relief requested will also preserve the status quo by preventing U.S. contract counterparties from terminating contracts based upon the commencement of the Canadian Proceeding and this Chapter 15 Case. Without provisional relief, counterparties may attempt to terminate contracts that are critical to my business operations and would be difficult to replace. Any terminations would further impair my ability to perform and frustrate the Proposal.

46.   Recognition of the Canadian Proceeding under chapter 15 of the Bankruptcy Code and provisional relief under Bankruptcy Code section 1519 will best assure an economical and equitable administration of my estate. The provisional relief sought is needed to preserve and protect my assets and prevent harm to all of my creditors. If provisional relief is not granted, creditors and other parties in interest are likely to take actions that would disrupt the orderly administration of my estate, leading to conflict between the United States courts and the Canadian court.

47.   As set forth in the Provisional Relief Motion, I am the subject of a "foreign proceeding" within the meaning of Bankruptcy Code section 101(23), which is a "foreign main

-12-

proceeding" within the meaning of Bankruptcy Code section 1502(4).  Further, I am a "foreign representative" within the meaning of Bankruptcy Code section 101(24).

48. I believe obtaining the provisional relief requested, pursuant to Bankruptcy Code sections 105(a) and 1519, is in the best interest of myself and my creditors.

49. Unless the provisional relief is granted, there is no assurance that creditors or other parties in interest will cease taking actions that will harm the estate and potentially deplete valuable assets for the benefit of all creditors.

50. The Provisional Relief Motion is only seeking to maintain the status quo pending a hearing on recognition of this Chapter 15 proceeding.

51. Moreover, any person interacting with me could reasonably expect that it must comply with the BIA, regardless of whether or not that person is located in Canada and is aware of the Canadian Proceeding. Therefore, it would be inherently fair and expected to require all parties to conform to and submit their claims in the Canadian Proceeding, as would be the case for creditors of a debtor under Chapter 7, 11, or 13 of the Bankruptcy Code.

52. A provisional stay of all litigation against myself and the attachment, seizure, transfer and lien and/or judgment enforcement of any parties as against myself and my assets, as well as a stay of the termination of contracts based on the filing of the Proposal and this Chapter 15 Case, will prevent permanent loss to the estate and will cause minimal hardship to any persons subject to the stay. Indeed, all of my creditors will benefit from efforts to preserve and maximize the value of the estate and a stay will prevent assets from being permanently lost.  All creditors will be able to participate in the Canadian Proceeding on an equitable basis with all other similarly situated creditors.

53. No prior application for the relief requested in the Provisional Relief Motion or similar relief has been made.

**STATEMENT PURSUANT TO SECTION 1515 OF THE BANKRUPTCY CODE**

54. I am informed that section 1515 of the Bankruptcy Code provides, in pertinent part, that "[a] petition for recognition shall also be accompanied by a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative." 11 U.S.C. § 1515(c).

55. Pursuant to section 1515(c) of the Bankruptcy Code and Bankruptcy Rule 1004.2(a), it is my belief that the Canadian Proceeding is currently the only insolvency proceeding. At this time, I do not intend to commence any additional foreign insolvency proceedings. To my knowledge, I am not aware of any creditors intending to commence any other foreign insolvency proceedings.

I declare under penalty of perjury under the laws of the United States of America that to the best of my knowledge the foregoing is true and correct.

Executed this **20** day of July, 2026 in Nanaimo, Canada.

Lauren Spencer-Smith